United States District Court

For the Northern District of California

1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6

7   DAVID A. KESSLER,

8          Plaintiff,                          No. C 08-5554 PJH

9      v.                                      **ORDER GRANTING DEFENDANTS'**
                                               **MOTION FOR SUMMARY JUDGMENT;**
10  J. MICHAEL BISHOP, et al.,                 **REQUIRING PLAINTIFF'S OPPOSITION**
                                               **PAPERS TO BE FILED**
11         Defendants.

12  _____/

13          Defendants' motion for summary judgment came on for hearing before this court on

14  July 27, 2011.  Plaintiff David Kessler ("plaintiff" or "Kessler"), appeared through his counsel

15  Thad Guyer.  Defendants J. Michael Bishop ("Bishop"), Robert Dynes ("Dynes"), and Mark

16  Yudof ("Yudof") (collectively "defendants"), appeared through their counsel, Kevin O'Brien

17  and Daniel Sharp.  Having read the parties' papers and carefully considered their

18  arguments and the relevant legal authority, and good cause appearing, the court GRANTS

19  defendants' motion for the reasons set forth below.

20                              **BACKGROUND**

21          This is a section 1983 action that stems from an employment dispute.  Plaintiff David

22  Kessler ("plaintiff" or "Kessler"), previously the Dean of the School of Medicine and Vice

23  Chancellor of Medical Affairs at the University of California, San Francisco ("UCSF"),

24  alleges that he was unlawfully retaliated against by University of California officials, as a

25  result of plaintiff's exercise of his First Amendment free speech rights.  Plaintiff brings suit

26  against defendants Chancellor Emeritus J. Michael Bishop ("Bishop"), President Emeritus

27  Robert Dynes ("Dynes"), and President Mark Yudof ("Yudof"), as well as a Doe defendant

28  (collectively "defendants").

United States District Court

For the Northern District of California

**A.**     **Factual Background**

**1.**     **Plaintiff's Tenure as Dean**

Kessler joined UCSF as the Dean of the School of Medicine and Vice Chancellor of

Medical Affairs, and also as a Professor of Pediatrics, in September 2003.  Doc. no. 56

(Declaration of Karen J. Petrulakis), Ex. 11 (filed under seal) (Reporter's Transcript of May

20 and October 19, 2009 hearings before the Grievance Hearing Committee ("RT")) at 14.

As Dean, Kessler was the chief academic and administrative officer of the School, charged

with developing "a vision and direction for the school."  Doc. no. 56, Ex. 12 (UCOP Senior

Management Group – Position Description ("Position Description")).  He was responsible

for financial oversight and management of the School.  RT 780; see also RT 150; 157-58.

As Dean and Vice Chancellor, Kessler reported to defendant J. Michael Bishop, who was

then Chancellor of UCSF.  RT 232:2-4.  Dr. Bishop reported to President Emeritus Dynes.

In February 2005, the University received an anonymous letter that accused Kessler

of mismanaging the finances of the School.  RT 42-45.  After this anonymous complaint

was received, Kessler asserted that the financial information the Campus had provided to

him during his recruitment in 2003 had misrepresented the amount of "recurring income"

that was available to the Dean and that, after becoming Dean, he "became aware of major

discrepancies in financial reporting" by the School.  Doc. no. 50, Ex. 13 (April 27, 2005

letter from Kessler to Steve Barclay); Doc. no. 50, Ex. 3 (Grievance) at 2.

To support his allegations of financial discrepancies, Kessler compared the June 9,

2003 spreadsheet that he was given during his recruitment showing revenue of $46 million

for 2001-2002 with a December 13, 2004 spreadsheet that was prepared by his staff

showing revenue of $28 million for 2001-2002.  See RT 31, 45-46.  Defendants' expert

forensic accountant, D. Paul Regan, opined that the $18 million difference between the

June 9, 2003 recruiting spreadsheet with revenue of $46 million for 2001-2002 and the

December 13, 2004 spreadsheet with revenue of $28 million for 2001-2002 is accounted

for by excluding endowment and gift income.  RT 1072-75.  Kessler's expert agreed that

2

United States District Court

For the Northern District of California

1  the December 13, 2004 spreadsheet cited by Kessler did not include endowment and gift

2  income.  RT 369-70.

3      The University Auditor investigated both Kessler's allegations and the anonymous

4  complaints about him.  Doc. no. 56, Ex. 20 (June 2007 Investigation Report: UCSF School

5  of Medicine ("Auditor's Report")) at 13-15; RT 567, 629-34.  The Auditor's Report found "no

6  evidence of intent to mislead the Dean."  Auditor's Report at 15.  With respect to Kessler's

7  accusation that the University had made financial misrepresentations to Kessler during his

8  recruitment, the Auditor's Report stated that "nothing came to our attention that caused us

9  to question the manner in which the data was presented or represented to the Dean during

10  his recruitment."  Auditor's Report at 15.  The Auditor's Report noted that the financial

11  documents that were the subject of Kessler's complaints were not financial statements or

12  their equivalent, but "data and analyses used for internal management purposes . . . .  The

13  data, when created, was not intended for use by others or for purposes beyond the

14  management needs of the prior Dean."  Id. at 14.

15      In further response to Kessler's accusations, Chancellor Bishop convened an ad-hoc

16  working committee to assess the amount of money that was available at Kessler's

17  discretion as Dean of the School.  RT 94, 781-85.  The ad-hoc committee was led by

18  Executive Vice Chancellor and Provost Eugene Washington and referred to as the

19  "Washington Committee."  RT 783.  The Washington Committee, which Kessler and his

20  staff were invited to join, concluded that Kessler's revenues were, and always had been,

21  sufficient to meet the needs of the Dean's Office.  RT 95-96, 1289.  Dr. Bishop retained

22  KPMG to verify the Washington Committee's conclusions.  RT 788, 926-27.  In February

23  2008, after Kessler had been terminated as Dean, KPMG issued a report which concluded

24  that the Washington Committee's methodology was not repeatable.  RT 126-29.  KPMG

25  further recommended that UCSF develop an automated reporting capability to generate a

26  report that is reconciled and supported by detailed financial results recorded in the general

27  ledger.  RT 374 (testimony of plaintiff's expert, Hakansson).  The KPMG report also

28

**United States District Court**

For the Northern District of California

1  showed that the Medical School's ending balance in 2007, when Kessler stepped down as

2  Dean, was actually higher than the projection in the recruiting spreadsheet.  RT 376-78.

3      While the University Auditor and the Washington Committee were conducting their

4  reviews, Kessler sent the University a memorandum from his attorney, Nicholas Gimbel,

5  whom Kessler asked to review the financial documents and prepare a report.  RT 102-03.

6  Gimbel opined that University officials had furnished Kessler with "materially misleading"

7  information during his recruitment, speculating, "[t]here is reason to believe that whoever

8  drafted the financial data which was presented to you may well have done so with the intent

9  to mislead you as to the true status of the Medical School's finances."  Doc. no. 56, Ex. 15

10  (April 24, 2006 memo from R. Nicholas Gimbel) at 1-2.  After Kessler submitted the Gimbel

11  report, the University treated Kessler as a whistleblower, although Kessler did not want to

12  be treated as such, in connection with the concerns he raised about the School's finances.

13  RT 108-09.  See doc. no. 56, Ex. 16 (May 9, 2006 letter from Kessler's attorney, Martin

14  Michaelson, to University counsel, Carole Rossi).

15      Kessler accused the University of engaging in a "cover-up for the last two years."

16  Doc. no. 56, Ex. 19 (April 8, 2007 email from Kessler to Jeffrey Blair).  Kessler's

17  accusations against the University strained his working relationships with members of the

18  Chancellor's office and his handling of the finances caused distrust among the vice

19  chancellors.  RT 472-74, 872-73.  At one point, Bishop formally reprimanded Kessler

20  asking him to use business meetings with the officers to conduct university business.  RT

21  876.

22      Over an extended period, then-Chancellor Bishop received complaints about

23  Kessler's leadership and ineffectiveness as the Dean: Bishop received complaints about

24  Kessler from university leadership, Provost Rory Hume and President Robert Dynes;

25  campus leadership, Provost and Executive Vice Chancellor Washington, Senior Vice

26  Chancellors Barclay and Spaulding; and the CEO of the medical center, Mark Laret.  RT

27  715-26.  Complaints about Kessler by the clinical chairs were reported, and two faculty

28  leaders complained that they believed there was a serious problem with the dean.  RT 736,

United States District Court

For the Northern District of California

1   738.  Senior campus administrators similarly communicated that Kessler had lost the trust

2   of his constituents, had difficulties in his interactions with donors, had become ineffective in

3   managing interactions between the School of Medicine and the Medical Center and did not

4   participate in the Campus-wide strategic planning process.  RT 724, 730-32.

5   On June 29, 2007, Bishop asked Kessler to resign as Dean.  Doc. no. 56, Ex. 21

6   (June 29, 2007 letter from Dr. Bishop to Kessler).  Kessler refused to resign.  RT 134.  On

7   December 13, 2007, Bishop and Dynes terminated Kessler from the posts of Dean and

8   Vice Chancellor.  RT 134-35; Compl. ¶ 33.  Kessler remained at UCSF as a tenured

9   Professor.  RT 398.

10                      **2.        Administrative proceedings**

11  On January 8, 2008, Kessler filed a grievance with the UCSF Academic Senate

12  Committee on Privilege and Tenure ("P&T Committee") pursuant to Senate Bylaw 335.B.2.

13  Doc. no. 56, Ex.3 (Grievance).  The Grievance asserted that the University removed

14  Kessler as Dean and Vice Chancellor in retaliation for Kessler's "protected disclosure" of

15  "major discrepancies in financial reporting."  Id. at 1-6.  Kessler sought reinstatement, back

16  pay, compensatory damages, punitive damages, and attorneys' fees.  Id. at 23-24.

17  Kessler sought and obtained a formal hearing on his retaliation claims before a

18  panel of faculty members pursuant to the University's Policy for Protection of

19  Whistleblowers from Retaliation and Guidelines for Reviewing Retaliation Complaints

20  ("Whistleblower Protection Policy").  California Government Code section 8547.10

21  mandates that the University establish an internal, administrative remedy for University

22  employees claiming to have been retaliated against for engaging in protected,

23  whistleblowing activity.  Cal. Govt. Code § 8547.10.  The University adopted the

24  "Whistleblower Protection Policy" to implement the remedy mandated by section 8347.10.

25  Doc. no. 56, Ex. 23 (Whistleblower Protection Policy).  Section IV.A.1 of the Whistleblower

26  Protection Policy provides that members of the Academic Senate may, if eligible, file

27  retaliation complaints with the P&T Committee for resolution pursuant to the procedures set

28  forth in Senate Bylaw 335 ("SBL 335").  Id. at 4; doc. no. 56, Ex. 24 (SBL 335).

1    Under SBL 335, upon receipt of a grievance and after preliminary review, the P&T

2    Committee may appoint a panel of faculty members to conduct a hearing on the grievance.

3    SBL 335.D.1.  The grievant is entitled to be represented by counsel and to "present [his]

4    case by oral and documentary evidence, to submit rebuttal evidence, and to conduct such

5    cross examination as may be required for a full and true disclosure of the facts."  SBL

6    335.D.3.  The panel may call witnesses or make evidentiary requests and may require that

7    witnesses testify under oath.  SBL 335.D.4.  The hearing must be transcribed or recorded.

8    SBL 335.D.9.  Following the hearing, the panel makes "findings of fact, conclusions

9    supported by a statement of reasons based on the evidence, and a recommendation,"

10    which it forwards to the Chancellor.  SBL 335.D.8.  The panel must limit its findings and

11    conclusions to the evidence presented at the hearing.  SBL 335.D.5.

12    The grievant bears the burden of proving the validity of the grievance by a

13    preponderance of the evidence.  SBL 335.D.7.  Under Section VII of the Whistleblower

14    Protection Policy, after receiving the panel's findings, conclusions and recommendations,

15    the Chancellor must render a final decision in the matter consistent with the following

16    burden of proof:

17    [O]nce the complainant demonstrates by a preponderance of the
      evidence that . . . [protected] activity was a contributing factor in the
18    alleged retaliation, the burden of proof shall be on the . . . University
      to demonstrate by clear and convincing evidence that the alleged
19    retaliatory action would have occurred independent of the
      employee's engagement in a protected disclosure . . . .
20

21

22    Whistleblower Protection Policy §§ V, VII.  The Whistleblower Protection Policy adopts the

23    burden of proof required for whistleblower retaliation claims under California Government

24    Code section 8547.10(e).  See Cal. Govt. Code § 8547.10(e).

25    The P&T Committee convened a panel of seven faculty members to conduct a

26    formal hearing on Kessler's Grievance.  See Doc. no. 56, Ex. 2 (Committee Report) at 2, 7.

27    Both Kessler and the Administration were represented by counsel.  Id. at 3.  In his

28    pre-hearing brief, Kessler identified the issues before the Panel as including the following:

United States District Court

For the Northern District of California

1
2
> Were the Grievant's protected disclosures . . . a contributing factor in this retaliation?

3
4
5
> Did the Administration show by clear and convincing evidence that it would have taken the same action against the Grievant regardless of his protected disclosures?

6
Doc. no. 56, Ex. 9 (Grievant's Prehearing Statement) at 4.

7
In his Prehearing Statement, Kessler stated:

8
9
10
11
12
13
14
15
16
> Pursuant to Article IX, section 9 of the California Constitution, this proceeding and the process of which it is a part, is a "quasi-judicial" proceeding of a department of the State of California recognized by the California Supreme Court as the equivalent of a court adjudication.  Campbell v. Regents of the University of California, 25 Cal. Rptr. 3d 320 (2005).  The decision of this Committee, subject to authorized review, will be respected and enforced by California courts, subject to only limited judicial review, so long as due process of law is accorded to the parties, and the proceeding adheres to the officially promulgated policies of the University.

17
Doc. no. 56, Ex. 9 (Grievant's Prehearing Statement) at 1-2.

18
19
20
21
22
23
24
25
26
27
28
Prior to the hearing, the parties submitted witness lists, exhibits and legal briefs. Kessler submitted 104 exhibits, all of which were accepted into evidence, and the Administration introduced an additional 561 exhibits into evidence.  Doc. no. 56, Exs. 7, 8. The hearing was conducted over seven days.  Committee Report at 2.  Kessler's counsel presented testimony from Kessler, two fact witnesses and an expert.  RT 13-144, 293-335, 360-77, 637-78.  The Administration offered the testimony of eight witnesses, including Dr. Bishop and Dr. Washington—two witnesses Kessler's counsel asserted were essential to Kessler's case.  RT 522 ("I won't insist on Blum, but I do insist on Bishop and Washington as part of the case in chief.").  Kessler's counsel cross-examined the defense witnesses and introduced five rebuttal witnesses.  See, e.g., RT 790-936 (cross-examination of Dr. Bishop); 1293-1333 (cross-examination of Dr. Washington); 1411-30, 1471-1545 (rebuttal

7

1   witnesses).  The hearing was concluded after the parties made closing arguments and

2   submitted post-hearing briefs.  Doc. no. 56, Ex. 22 (Grievant's Post-Hearing Brief); RT

3   1566-1624.

4        On January 11, 2010, the Hearing Committee issued its findings of fact, conclusions

5   and recommendations.  Doc. no. 56, Ex. 2 (Committee Report).  The Hearing Committee

6   unanimously concluded that Kessler's Grievance should be denied in its entirety.  Id. at 7.

7   The Hearing Committee found that "the reason for Dr. Bishop's decision, in consultation

8   with his superiors, to terminate Dr. Kessler from his Deanship was not retaliation for Dr.

9   Kessler having made protected disclosures.  Rather, Dr. Bishop's decision reflected his

10  view that Dr. Kessler could no longer effectively lead the School of Medicine."  Id. at 6.  The

11  Hearing Committee also found that Kessler's "allegations of financial irregularities" did not

12  contribute to his dismissal, and that Kessler's incessant discussion of these unfounded

13  allegations "interfered with the work of the [C]ampus, and damaged his ability to lead."  Id.

14  The Hearing Committee concluded:

> [Kessler's] disclosures . . . were not a contributing factor in the
> Administration's actions [and] . . . the Administration has shown by
> clear and convincing evidence that none of the adverse actions in the
> grievance were based on retaliation for protected disclosures.

15

16

17

18  Id. at 7.

19       Chancellor Susan Desmond-Hellmann was provided with the Hearing Committee's

20  Report as well as a complete copy of the record of the proceeding, submitted jointly by the

21  parties.  See doc. no. 56, Ex. 1 (Final Decision).  Following her review, on April 26, 2010,

22  the Chancellor issued a Final Decision in the form of a letter to Kessler that accepted and

23  adopted the Hearing Committee's findings and conclusions, and denied Kessler's

24  grievance in its entirety:

> I find that you have failed to demonstrate, by a preponderance of the
> evidence, that your protected disclosure was a contributing factor to
> . . . your removal as Dean and Vice Chancellor. . . . I also find that
> the University administration has demonstrated, by clear and

25

26

27

28

8

United States District Court

For the Northern District of California

1
2
convincing evidence, that the alleged adverse actions . . . would have
occurred independent of your protected disclosure.

3
Id. at 1-2.

4
5
6
7
8
Kessler has not sought judicial review of the Chancellor's Final Decision by filing a writ of mandate pursuant to California Code of Civil Procedure section 1094.5.  Kessler has stated to this court that he will not do so.  Doc. no. 33 (Amended Opposition to Motion to Dismiss) at 9 ("Defendants correctly state that . . . 'Dr. Kessler may seek judicial review' . . . and that he has declined to do so.").

9
**B.    Procedural History**

10
11
12
13
14
15
16
On December 12, 2008, while the administrative proceedings were still pending, plaintiff filed the instant suit against defendants, alleging three claims for relief: (1) a section 1983 claim alleging unlawful retaliation in violation of plaintiff's First Amendment free speech rights; (2) a section 1983 claim alleging unlawful retaliation in violation of plaintiff's First Amendment right to petition for redress of grievances; and (3) a claim against Bishop, Dynes and Doe defendants for conspiracy to commit unlawful retaliation under section 1983  against Kessler in violation of his First Amendment rights.

17
18
19
20
21
22
23
24
25
26
27
Before defendants responded to the complaint, Kessler entered a "Stipulation and Order Staying Action" pending the conclusion of the Administrative Hearing.  Doc. no. 13. The basis for the stay was that "the final outcome of that Administrative Hearing . . . will likely clarify and focus some or all of the legal and factual issues that are before this Court, and may result in arguments over preclusive effect and/or mootness as to all or part of each party's claims and defenses in this action before this Court," and that "staying this action until the conclusion of the Administrative Hearing will result in an economy of judicial resources and avoid unnecessary duplication of effort by the Court and the parties."  Id. at 2.  Kessler stipulated to an extension of the stay twice, once while the Administrative Hearing was pending, doc. no. 15, and again after the Hearing Committee issued its Report but before the Final Decision.  Doc. no. 19.

28

United States District Court

For the Northern District of California

1    Upon the Chancellor's issuance of her Final Decision, the stay expired and

2    defendants filed a motion to dismiss on the grounds of failure to state a claim, qualified

3    immunity and res judicata.  By order dated January 21, 2011, the court denied the motion

4    to dismiss.  With respect to the issue of res judicata, the court denied the motion to dismiss

5    as premature because the court could not take judicial notice of the substance of the

6    documents in the administrative record.  See Doc. no. 44 at 3-5 (Order Denying Motion to

7    Dismiss).  At the June 16, 2011 CMC, the court granted leave to proceed with the summary

8    judgment motion on the issue of res judicata, but not qualified immunity.

9    Defendants have filed an early motion for summary judgment on the grounds that

10   plaintiff's claims are barred by res judicata and by qualified immunity.  Defendants'

11   objections to Kessler's declaration in support of his opposition to the motion for summary

12   judgment are OVERRULED.

13   Furthermore, it is hereby ORDERED that Kessler's opposition to the motion for

14   summary judgment, and supporting declaration and exhibits, be unsealed and filed on the

15   public docket on the grounds that the University has not filed an affidavit supporting

16   Kessler's motion to seal his papers pursuant to Civil Local Rule 79-5 (doc. no. 62), and that

17   the confidential treatment of proceedings before the Privilege and Tenure Committee of the

18   Academic Senate which occurred over two years ago does not present a sufficiently

19   compelling reason to seal the entirety of Kessler's documents submitted to the court in

20   opposition to a dispositive motion.  Kamakana v. City and County of Honolulu, 447 F.3d

21   1172, 1178-79 (9th Cir. 2006).  The parties may stipulate to filing a redacted version of

22   Kessler's papers on the public docket to redact (1) the identities of the faculty members

23   serving on the hearing committee, the hearing officer and the witnesses who testified at the

24   hearing; and (2) any confidential financial information about the University.  The parties

25   must so stipulate and must e-file the redacted versions by October 20, 2011, and e-file the

26   complete version of the documents under seal according to the procedures set forth on the

27   court's ECF website pursuant to General Order 62.  Failure to do so shall result in the filing

28   of all of Kessler's opposition papers on the public docket.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

**A.    Legal Standard**

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**B.    Analysis**

Defendants bring this motion for summary judgment on the ground that the doctrines of res judicata and collateral estoppel prevent plaintiff from asserting his section 1983 claims in this action, because the same facts and issues giving rise to plaintiff's section 1983 claim have already been litigated and finally determined as part of his administrative grievance procedure.

United States District Court

For the Northern District of California

1

### 1.     Preclusive Effect of Administrative Decisions

2       Res judicata, or claim preclusion, prohibits the re-litigation of any claims that were

3   raised or could have been raised in a prior action.  Western Radio Servs. Co., Inc. v.

4   Glickman, 123 F.3d 1189, 1192 (9th Cir.1997).  "In its primary aspect the doctrine of res

5   judicata [or "claim preclusion"] operates as a bar to the maintenance of a second suit

6   between the same parties on the same cause of action.' . . . The secondary aspect is

7   'collateral estoppel' or 'issue preclusion,' which does not bar a second action but 'precludes

8   a party to an action from relitigating in a second proceeding matters litigated and

9   determined in a prior proceeding.'"  Murphy v. Murphy, 164 Cal.App.4th 376, 398 (2008)

10  (citations omitted).

11      Under 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state

12  court judgments as would be afforded those judgments by courts of that state.  See Far Out

13  Prods., Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001); Miller v. County of Santa Cruz, 39

14  F.3d 1030, 1032 (9th Cir. 1994).  Section 1738 applies where administrative findings have

15  been reviewed by state courts of general jurisdiction.  See Clements v. Airport Authority of

16  Washoe County, 69 F.3d 321, 326-27 (9th Cir. 1995).

17      Although section 1738 does not govern cases involving administrative decisions that

18  have not been reviewed by a state court, as a matter of federal common law, federal courts

19  give preclusive effect to the findings of state administrative tribunals in subsequent actions

20  under § 1983.  Miller, 39 F.3d at 1032-33 (citing University of Tennessee v. Elliott, 478 U.S.

21  788, 797-98 (1986)).  "When an administrative agency is acting in a judicial capacity and

22  resolved disputed issues of fact properly before it which the parties have had an adequate

23  opportunity to litigate, the courts have not hesitated to apply res judicata to enforce

24  repose."  United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966).  The

25  Ninth Circuit has extended preclusive effect to "state administrative adjudications of legal

26  as well as factual issues, as long as the state proceeding satisfies the requirements of

27  fairness outlined in [Utah Construction]:" (1) that the administrative agency act in a judicial

28  capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that

**United States District Court**
For the Northern District of California

1    the parties have an adequate opportunity to litigate. Miller, 39 F.3d at 1032-33 (where

2    plaintiff elected not to seek judicial review of county administrative commission's decision,

3    adverse administrative decision precluded subsequent § 1983 action in federal court).

4         Section 1738 does not apply here because Kessler did not file a mandamus action

5    for judicial review of the administrative ruling. Opp. at 3.  The court must therefore give the

6    University's final decision on Kessler's grievance the same preclusive effect (whether claim

7    or issue preclusion) to which it would be entitled in state courts, provided that the University

8    acted in a judicial capacity; the grievance procedure resolved identical issues now before

9    the court; and plaintiff had a full and fair opportunity to litigate the same issues as part of

10   his grievance proceeding. Elliott, 478 U.S. at 797-99 (citing Utah Construction, 384 U.S. at

11   422).

12        Defendants demonstrate that the first two Utah Construction factors are satisfied.

13   First, the University acted in a judicial capacity during Kessler's grievance proceedings.

14   See doc. no. 51 at 21.  Under California law,  "the University [of California] is a statewide

15   administrative agency possessing adjudicatory powers derived from the Constitution as to

16   the problems and purposes of its personnel." Ishimatsu v. Regents of Univ. of Cal., 266

17   Cal. App. 2d 854, 864 (1968).  Second, Kessler submitted disputed issues of fact for

18   resolution during his grievance proceeding, which the University decided.  Doc. no. 51 at

19   21-22.  See Beckway v. DeShong, 717 F.Supp.2d 908, 920 (N.D.Cal. 2010) ("'An issue is

20   actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted

21   for determination, and is determined.'") (quoting People v. Carter, 36 Cal.4th 1215, 1240

22   (2005)).

23        Kessler does not challenge the first two factors for claim or issue preclusion under

24   Utah Construction, but challenges the adequacy of the grievance proceeding in satisfying

25   the third Utah Construction factor, contending that he did not have a full and fair opportunity

26   to litigate his claims.  Pl's Opp. to Mot. Summ. J. ("Opp.") at 19.

27        Defendants further argue that Kessler's claims are barred under principles of res

28   judicata (claim preclusion) and collateral estoppel (issue preclusion) because the same

United States District Court

For the Northern District of California

1   primary rights are at stake in both actions – as demonstrated by Kessler's identical factual

2   allegations and relief requested.  Kessler opposes defendants' motion on the ground that

3   the administrative decision on his grievance proceeding did not address his rights under the

4   First Amendment.

5       Kessler also contends that he only seeks relief under § 1983, not under the

6   whistleblower statute, and argues that administrative decisions under section 8547.10 of

7   the whistleblower statute do not have preclusive effect on § 1983 claims.

8                    **2.     Full and Fair Opportunity to Litigate**

9       Kessler concedes that the administrative proceeding was not required to apply

10  formalistic rules of evidence and procedure in order to have preclusive effect.  Opp. at 19.

11  Kessler contends, however, that he did not have a "full and fair opportunity" to litigate the

12  issues in his grievance proceeding so as to require its preclusive effect under Utah

13  Construction.  Id.

14                        **a.     Inability to subpoena witnesses**

15      First, Kessler contends that the Committee's inability to subpoena or otherwise

16  compel the attendance of witnesses and to discover the facts that they possessed was fatal

17  to his ability to litigate his claims fully and fairly under federal law.  Id.  The parties do not

18  dispute that the Committee lacked subpoena power.  In Miller, the court addressed the

19  plaintiff's argument that the hearing procedure was defective because the county

20  commission could not, under state law, issue subpoenas.  39 F.3d at 1037 n.6.  Though the

21  record was unclear there as to whether the county commission had subpoena power, the

22  court nevertheless determined that "the absence of formal trial procedures has not

23  historically prevented California courts from according preclusive effect to administrative

24  decisions."  Id.  Here, Kessler was able to call, examine and cross-examine witnesses

25  during the administrative proceeding, giving him an adequate opportunity to litigate.

26      Kessler contends that the decision to terminate him was made by the highest UCSF

27  and Regents officials, and that he wanted Regent Blum to testify.  Opp. at 5.  Kessler

28  represents, "At the prehearing conference, Kessler explained that while he could rest his

United States District Court

For the Northern District of California

1   case in chief based on four friendly witnesses, he wanted to call at least three additional

2   officials, Chancellor Michael Bishop, Vice Chancellor Gene Washington, and Regent

3   Richard Blum.  [UCSF] did call the former two, but after agreeing to call Regent Blum, then

4   refused to do so.  Regent Blum was a constant actor referenced throughout the hearing,

5   with at least 100 instances of his name in the hearing transcript."  Opp. at 6-7.  During the

6   hearing, the parties discussed which witnesses Kessler insisted upon as a condition of

7   resting his case in chief and Kessler's counsel stated, "I won't insist on Blum, but I do insist

8   on Bishop and Washington as part of the case in chief."  RT 522.  Kessler contends that he

9   did not "waive" the calling of Blum as a witness but only indicated that he would not insist

10  on calling Blum to testify as part of his case in chief.  Opp. at 7-8.

11          Both Chancellor Bishop and Vice-Chancellor Washington testified at the hearing, as

12  Kessler insisted.  Kessler now contends that "Regent Blum was the most important witness

13  on Kessler's witness list.  If Blum would testify under oath consistently with what he had

14  stated to Kessler, he could have proven that retaliation for protected disclosures was a key

15  contributing factor" of Kessler's termination.  Opp. at 9.  Defendants point out, however,

16  that Kessler was permitted to introduce hearsay evidence of Blum's purported comments

17  regarding Kessler's dismissal as Dean so that Kessler had an adequate opportunity to

18  litigate his grievance.  Doc. no. 64 at 8.

19          The record shows that Kessler testified extensively about his conversations with

20  Blum about the University's alleged retaliatory animus.  See Opp. at 9 (quoting RT 205-06,

21  244-45).  The record also demonstrates that Kessler had an opportunity to cross-examine

22  Bishop and Washington about their interactions with Blum over Bishop's intent to terminate

23  Kessler.  Opp. at 10-11 (quoting RT 752, 754 (cross-examination of Bishop)); RT 1327

24  (cross-examination of Washington).

25          Kessler does not explain how Blum's live testimony would have provided the missing

26  elements of Kessler's retaliation claims or otherwise changed the outcome of the hearing.

27  As defendants point out, it was Bishop, not Blum, who made the

28

United States District Court
For the Northern District of California

1  decision to dismiss Kessler, and Kessler did not allege that Blum was responsible for any of

2  the alleged acts of retaliation.  Doc. no. 64 at 13 (citing RT 209, 714-15, 866-97).

3      Kessler also contends that he and his counsel were not permitted to contact the

4  UCSF or Regents officials and were not permitted to contact the donors who allegedly

5  criticized him.  Opp. at 5-6.  As with Blum, Kessler has not demonstrated that the absence

6  of those witnesses prevented him from fully and fairly litigating his claims, or that their

7  testimony would have affected the outcome of the hearing.

8                  **b.     UCSF documents**

9      Kessler also contends that UCSF did not produce documents that he had requested

10 for his grievance, limiting his ability to develop factual issues.  Opp. at 3.  Defendants

11 respond that Kessler did not raise any objection with the administrative tribunal about the

12 University document production.  Doc. no. 64 at 13.  Nor does Kessler identify an actual

13 deficiency in the documents that were actually produced.  Id.  Kessler has therefore failed

14 to demonstrate a triable issue about the adequacy of his opportunity to litigate his claims in

15 the administrative proceeding based on defendants' document production.

16                  **c.     Delay**

17     Kessler also challenges the adequacy of the grievance proceeding, arguing that it

18 suffered from "extraordinary delay" in that it took almost 17 months from the time of filing

19 his grievance until the first day of hearing in May 2009 and the committee issued its

20 findings and recommendations about eight months later on January 11, 2010.  Opp. at 3.

21 Kessler further argues that the hearing "was an untimely, disjointed and haphazard process

22 involving six non-consecutive days of hearing between May 20 and October 16, 2009."

23 Opp. at 3.  Kessler does not explain how any such delay impacted his ability to litigate his

24 claims fully and fairly.

25              **3.     Preclusive effect of administrative decision**

26     In Miller, the court of appeals held that California law would have accorded

27 preclusive effect to a county civil service commission's decision sustaining dismissal of a

28 public employee after "a public evidentiary hearing at which Miller was represented by

16

**United States District Court**
For the Northern District of California

1    counsel and was permitted to present oral and documentary evidence and to call

2    witnesses."  39 F.3d at 1032.

3          Defendants have provided evidence that Kessler, as in <u>Miller</u>, was given an

4    evidentiary hearing, where he was represented by counsel, and was permitted to present

5    oral and documentary evidence and to call witnesses.  Kessler fails to raise any dispute of

6    material fact regarding the fairness of the administrative proceedings.  Thus, defendants

7    have shown that the University's administrative decision is entitled to the same preclusive

8    effect to which it would be entitled under state law.  <u>Utah Construction</u>, 384 U.S. at 422.

9                    **4.    Identity of Claims or Issues: Factual Determinations in**

10                           **Administrative Hearing**

11         The court must determine what preclusive effect would be given to the University's

12   administrative decision.  The key issue is whether, under California law, a § 1983 claim for

13   retaliation in violation of plaintiff's right to free speech under the First Amendment involves

14   the same cause of action as plaintiff's whistleblower grievance under the "primary rights"

15   test for claim preclusion.  If claim preclusion is not applicable, the court must then

16   determine whether this action presents identical issues with the administrative proceeding.

17                                    **a.    Res Judicata**

18         California courts have recognized that "[i]n its primary aspect the doctrine of res

19   judicata operates as a bar to the maintenance of a second suit between the same parties

20   on the same cause of action."  <u>Mattson v. City of Costa Mesa</u>, 106 Cal.App.3d 441, 446

21   (1980) (citations and quotation marks omitted).  "Under this aspect of res judicata the prior

22   final judgment on the merits not only settles issues that were not actually litigated but also

23   every issue that might have been raised and litigated in the first action."  <u>Id</u>. (citing <u>Olwell v.</u>

24   <u>Hopkins</u>, 28 Cal.2d 147, 152 (1946)).  "It also precludes litigation of the same cause of

25   action on a different legal theory or for different relief."  <u>Id</u>. (citations omitted).

26         Unlike the federal courts, which apply a "transactional nucleus of facts" test,

27   "California courts employ the 'primary rights' theory to determine what constitutes the same

28   cause of action for claim preclusion purposes."  <u>Maldonado v. Harris</u>, 370 F.3d 945, 952

                                                 17

United States District Court

For the Northern District of California

1    (9th Cir.2004).  "Under this theory, 'a cause of action is (1) a primary right possessed by

2    the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm

3    done by the defendant which consists in a breach of such primary right and duty.'"

4    Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting City of Martinez v. Texaco

5    Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003) [citation omitted]).  "[I]f two

6    actions involve the same injury to the plaintiff and the same wrong by the defendant, then

7    the same primary right is at stake even if in the second suit the plaintiff pleads different

8    theories of recovery, seeks different forms of relief and/or adds new facts supporting

9    recovery."  Id. (citing Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174 (1983)).

10        Under the primary rights theory, there is only a single cause of action for the

11    invasion of one primary right.  "The most salient characteristic of a primary right is that it is

12    indivisible: the violation of a single primary right gives rise to but a single cause of action."

13    Crowley v. Katleman, 8 Cal.4th 666, 681 (1994) (quoting Slater v. Blackwood, 15 Cal.3d

14    791, 795 (1975)).  In determining the primary right, "the significant factor is the harm

15    suffered."  Swartzendruber v. City of San Diego, 3 Cal.App.4th 896, 904 (1992),

16    disapproved on other grounds by Johnson v. City of Loma Linda, 24 Cal.4th 61, 72 (2000).

17        Defendants contend that "California appellate courts have expressly held that an

18    unreviewed administrative decision is binding so as to preclude the plaintiff from later filing

19    a § 1983 claims [sic] arising from the same facts."   Doc. no. 51 at 20.  Even where a public

20    employee fails to have an administrative finding set aside through judicial review

21    procedures, the adverse administrative finding is entitled to preclusive effect.  Johnson v.

22    City of Loma Linda, 24 Cal. 4th 61, 76 (2000).  Neither party cites authority under California

23    law that directly addresses the question whether a whistleblower cause of action involves

24    the same primary right as a claim asserting the right to free speech protected by the First

25    Amendment.  It is well established, however, that principles of res judicata and collateral

26    estoppel apply to the federal civil rights statutes.  Migra v. Warren City School Dist. Bd. of

27    Ed., 465 U.S. 75 (1984) (state preclusion law applies to § 1983 claims).  See

28    Swartzendruber, 3 Cal.App.4th at 908; Takahashi v. Board of Trustees of Livingston Union

18

United States District Court

For the Northern District of California

1  School, 783 F.2d 848 (9th Cir. 1986) (plaintiff's federal court case including § 1983 claims

2  was barred by the res judicata effect of the prior state court judgment denying plaintiff's

3  petition in the first action).

4       Plaintiff's Grievance with the University asserted four claims: two claims for

5  retaliation in violation of Cal. Gov't Code section 8547.10 and Labor Code section 1102.5;

6  termination in violation of Cal. Gov't Code section 12653(b); and termination in violation of

7  public policy under California common law.  See doc. no. 56, Ex 3 (Grievance).  Applying

8  the "primary rights" theory to determine whether Kessler's claims are precluded here by the

9  earlier administrative decision, and looking primarily to the harm suffered, Kessler's claims

10  in both proceedings "involve the same injury to the plaintiff and the same wrong by the

11  defendant," that is, that plaintiff was wrongfully terminated from his position as Dean and

12  Vice Chancellor in retaliation for his statements about the School's alleged financial

13  discrepancies.  Although Kessler pleads a different theory of recovery under the First

14  Amendment here, this action involves the same "primary right" to protected speech,

15  violation of defendants' duty not to retaliate against its employees, and the same harm that

16  he alleged to have suffered in his grievance proceeding based on his statements protected

17  under the Whistleblower Act.  See Swartzendruber, 3 Cal.App.4th at 908.  Cf. George v.

18  Cal. Unemployment Ins. Appeals Bd., 179 Cal. App. 4th 1475, 1483-84 (2009) (FEHA

19  retaliation claim involved different primary right than disciplinary suspension proceedings).

20  Thus, Kessler's § 1983 claims do not present a separate injury from that litigated during the

21  administrative proceeding and merely restate his whistleblower grievance in constitutional

22  terms.

23       Kessler contends that he filed this § 1983 action to pursue his First Amendment free

24  speech remedies and did not view the whistleblower grievance to be a substitute for a

25  § 1983 action.  Opp. at 3.  Kessler states that if he had known that he had the legal choice

26  to pick one or the other remedy, he would have opted for the § 1983 action.  Declaration of

27  David A. Kessler ¶ 5.  Kessler's complaint alleges, however, that "[t]he University Academic

28  Personal Manual states, 'Members of the faculty are entitled as University employees to the

United States District Court

For the Northern District of California

1    full protections of the Constitution of the United States and of the Constitution of the State

2    of California.  These protections are in addition to whatever rights, privileges, and

3    responsibilities attach to the academic freedom of university faculty."  Compl. ¶ 26.  Thus,

4    even though Kessler contends that he did not present his First Amendment rights in the

5    administrative proceeding, the grievance procedures gave him an "adequate opportunity to

6    litigate" those rights under University policies.  Miller, 39 F.3d at 1033 (citing Utah

7    Construction factors).  Kessler's failure to raise his First Amendment rights in the

8    administrative proceeding does not avoid the preclusive effect of the administrative

9    findings.  As the Ninth Circuit noted in Miller,

10              There can be no justification for plaintiff's position that she should be
11              permitted to fail to assert at the administrative hearing constitutional
              and civil rights violations as reasons that made her termination
12              wrongful, fail to prevail on the writ without attempting to urge or to
13              bring before the court those reasons, and then be allowed to recover
              damages in this consolidated action that resulted from termination of
14              her employment alleged to be wrongful based on those same
15              reasons.

16

17    Miller, 39 F.3d at at 1034 (quoting Swartzendruber, 3 Cal.App.4th at 909).  With respect to

18    Kessler's claim that defendants conspired to retaliate against him, "he could have raised

19    the specific allegation of conspiracy" in his administrative proceeding.  See Sanchez v. City

20    of Santa Ana, 936 F.2d 1027, 1036 (9th Cir. 1991) (as amended) (res judicata bars

21    plaintiff's federal constitutional claims which were based upon the same due process rights

22    related to pre-termination claims decided by personnel board).

23         Therefore, the court concludes that the doctrine of res judicata bars Kessler's § 1983

24    claims here.

25                        **b.    Collateral Estoppel**

26         Even if Kessler's § 1983 claims were not precluded under the doctrine of res

27    judicata, the claims would be barred under the doctrine of issue preclusion.  "Collateral

28    estoppel precludes relitigation of issues argued and decided in prior proceedings."

United States District Court

For the Northern District of California

Hernandez v. City of Pomona, 46 Cal. 4th 501, 511 (2009) (citations and quotation marks omitted).  The threshold requirements for issue preclusion are: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding.  Id. The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. Id. at 511-12 (citation omitted).

The complaint makes the following allegations found in the Grievance (doc. no. 56, Ex. 3):

(1)  During his recruitment in June 2003, he was shown documents "purporting to show . . . actual and projected revenues available to the Dean."  Complaint ¶ 10; Grievance at 1-2.

(2)  In December 2004, Kessler "again requested financial information about the Medical School . . . ."  Based on this information, Kessler "became aware of . . . discrepancies in revenue between what was represented [in June 2003] and what was actually available [in December 2004]."  Complaint ¶ 10; Grievance at 2.

(3)  Kessler shared his "discoveries" with Campus and University officials and was "persistent, over the course of nearly two and a half years . . . that the financial discrepancies he had found should be investigated."  Complaint ¶¶ 10, 13; Grievance at 2.

(4)  On June 29, 2007, Dr. Bishop, in a letter, asked Kessler to step down as Dean, citing "'distressing reports of mounting dissatisfaction with [Kessler's] leadership within the Campus and University' and among important supporters of UCSF and that '[t]hese circumstances are undermining morale, impeding the conduct of university business and damaging support of the School and Campus in the San Francisco community.'"  Complaint ¶ 19; Grievance at 4.

(5)  On December 13, 2007, Dr. Bishop and President Emeritus Dynes terminated Kessler as Dean and Vice Chancellor of Medical Affairs. Complaint ¶ 23; Grievance at 6.

United States District Court

For the Northern District of California

1  The Hearing Committee determined that Kessler's communications to University

2  officials about alleged financial irregularities and attempts to persuade the University to

3  conduct investigations "constituted a 'protected disclosure' within the meaning of APM 190,

4  Appendix A2, section II.A."  Doc. no. 56, Ex. 2 at 4 (Hearing Committee findings).  The

5  Committee found that "the reason for Dr. Bishop's decision, in consultation with his

6  superiors, to terminate Dr. Kessler from his Deanship was not retaliation for Dr. Kessler

7  having made protected disclosures.  Rather, Dr. Bishop's decision reflected his view that

8  Dr. Kessler could no longer effectively lead the School of Medicine."  Id. at 6.  The Hearing

9  Committee also found that Kessler's "allegations of financial irregularities" did not contribute

10  to his dismissal, and that Kessler's incessant discussion of these unfounded allegations

11  "interfered with the work of the [C]ampus, and damaged his ability to lead."  Id.  The

12  Hearing Committee concluded:

13  that [Kessler's protected] disclosures themselves were not a
    contributing factor in the Administration's actions, including his
14  removal from the position as Dean of the School of Medicine, and
    that the Administration has shown by clear and convincing evidence
15  that none of the adverse actions in the grievance were based on
    retaliation for protected disclosures.
16

17

18  Id. at 7.

19  In a § 1983 action, to prove retaliation in violation of his First Amendment right to

20  free speech or freedom to petition for redress of grievances, a plaintiff must show (1)

21  whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as

22  a private citizen or public employee; (3) whether the plaintiff's protected speech was a

23  substantial or motivating factor in the adverse employment action; (4) whether the state

24  had an adequate justification for treating the employee differently from other members of

25  the general public; and (5) whether the state would have taken the adverse employment

26  action even absent the protected speech.  Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir.

27  2009).  In the grievance proceeding, the University adopted the Hearing Committee's

28  finding that Kessler's disclosures were not a contributing factor in his termination as Dean

United States District Court

For the Northern District of California

1   and that none of the adverse actions were based on retaliation.  Because these issues

2   were decided in the quasi-judicial administrative proceeding, Kessler is barred from

3   relitigating these issues in this action.

4        Defendants have made a successful prima facie showing in support of their position

5   that the University's findings and decision are entitled to preclusive effect.  Kessler has set

6   forth no specific facts controverting this showing.  Having determined that the

7   administrative findings and decision are entitled to preclusive effect in this § 1983 action,

8   the court concludes that Kessler is precluded by the doctrines of res judicata and collateral

9   estoppel from bringing his § 1983 claims for violation of his First Amendment rights.  See

10  Miller, 39 F.3d at 1038 (applying preclusion to § 1983 claims against individual named

11  defendants acting within the course and scope of their employment).

12          **5.      Bar to Action for Damages Under Section 8547.10(c)**

13       Plaintiff further argues that the general doctrines of res judicata and collateral

14  estoppel do not apply to administrative proceedings such as his statutory whistleblower

15  claim which therefore should not be entitled to preclusive effect.  Plaintiff cites no

16  controlling authority to support this position.

17       The California Whistleblower Protection Act, Cal. Gov.Code, § 8547 et seq. (the

18  "Whistleblower Act"), prohibits retaliation against state employees who "report waste, fraud,

19  abuse of authority, violation of law, or threat to public health" (§ 8547.1). The Act authorizes

20  "an action for damages" to redress acts of retaliation. ( §§ 8547.8, subd. (c), 8547.10, subd.

21  (c), 8547.12, subd. (c).)  The whistleblower provision applicable to employees of the

22  University, section 8547.10(c), as in effect between January 1, 2000 and December 31,

23  2010, provided as follows:

24              (c) In addition to all other penalties provided by law, any person
                who intentionally engages in acts of reprisal, retaliation, threats,
25              coercion, or similar acts against a university employee, including an
                officer or faculty member, or applicant for employment for having
26
                made a protected disclosure shall be liable in an action for
27              damages brought against him or her by the injured party. Punitive

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

damages may be awarded by the court where the acts of the offending party are proven to be malicious. Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, **any action for damages shall not be available** to the injured party **unless the injured party has first filed a complaint with the university officer** identified pursuant to subdivision (a), **and the university has failed to reach a decision** regarding that complaint within the time limits established for that purpose by the regents.

Cal. Govt. Code Ann. § 8547.10(c) (West: 2010) (emphasis added).

Kessler contends that statutory claims under section 8547.10 that are adjudicated in an administrative proceeding are not entitled to the preclusive effect given to administrative proceedings under common law. Opp. at 14. Plaintiff cites no authority for this proposition, but points to state court decisions determining that other provisions of the Whistleblower Act do not have preclusive effect on subsequent damages actions. Those provisions of the Whistleblower Act that are applicable to non-University employees do not apply, however, to employees of the University, such as Kessler, to whom section 8547.10 applies. See Miklosy v. Regents of University of California, 44 Cal.4th 876 (2008) (section 8547.10(c) precludes a damages action when the University of California has timely decided a retaliation complaint). See also Runyon v. Board of Trustees of California State University, 48 Cal.4th 760, 764-67 (2010) (recognizing that section 8547.10 did not include provision for parallel damages action as provided for California State University ("CSU") employees by section 8547.12(c) or for other non-University state agency employees by section 8547.8(c)) (citing State Bd. of Chiropractic Examiners v. Superior Court, 45 Cal.4th 963 (2009)). In the absence of state law authority abrogating the preclusive effect of administrative decisions made under section 8547.10, as it was in effect when Kessler filed this action, the court applies the normal rules of collateral estoppel under California law.

Kessler also makes the point that his present action brings federal claims for relief pursuant to § 1983, and does not seek damages or relief under section 8547.10. Opp. at

United States District Court

For the Northern District of California

16.  The Whistleblower Act expressly provides that section 8547.10 is not the exclusive remedy for University employees: "Nothing in this article shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or state law or under any employment contract or collective bargaining agreement."  Cal. Govt. Code § 8547.10(f).  Defendants do not contend that section 8547.10 would bar any action for damages for claims other than statutory whistleblower actions, but rather that the administrative decision precludes this action.

Having determined that the University's administrative decision is entitled to claim preclusive and issue preclusive effect, the court must defer to the Chancellor's Final Decision denying Kessler's grievance.  Thus, the court does not reach the merits of Kessler's complaint.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: October 5, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge